Roig, Appellant, *v.* The Registrar of Humacao, Respondent.

.Appeal from a Decision of the Registrar of Property Denying Admission to Record of a Voluntary Mortgage.

No. 199.—Decided June 26, 1915.

Mortgage—Advances—Construction of Law.—Articles 59, 60 and 94 of the Mortgage Law refer to cautionary notices of credits for advances and to the conversion of such entries into mortgage records and not to mortgages expressly executed to secure sums already received and to be received in the future for a purpose indicated.

Id.—Future Obligation—Third Parties.—According to articles 142 and 143 of the Mortgage Law, as a mortgage is an accessory obligation it may be

created to secure the performance of any kind of contract allowed by law, whether it be absolute or conditional; to a day certain or from a day certain; for something contracted for the present, for the future or intended to be contracted; for all of the debt or a part of it; for natural obligations or civil obligations; wherefore the principal obligation may not be actionable while the mortgage created by a third party to secure it is actionable.

ID.—RECORD OF MORTGAGE—THIRD PARTIES.—In the record of a mortgage the amount for which the property is to respond as principal, interest and costs should be clearly expressed, but if this distinction is not made in the deed, the registrar should be guided by what it does set out and should not classify the lack of that distinction as a defect, because the important point is to know what the property is liable for as against third parties.

The facts are stated in the opinion.

*Mr. Francisco González* for the appellant

Mr. Miguel Planellas, the respondent, appeared *pro se.*

MR. JUSTICE HUTCHISON delivered the opinion of the court

This is an administrative appeal from a ruling of the Registrar of Property of Humacao refusing to record a certain voluntary mortgage. On August 16, 1914, Vicente Velázquez and his wife, María Peña, parties of the first part, and Antonio Roig Torrellas, as president of the sugar corporation named "El Ejemplo," organized under the laws of Porto Rico, party of the second part, executed in Humacao, before Notary Francisco González, a contract of advances for the planting and grinding of canes, secured by mortgage.

The instrument recites, among other things, that Velázquez and wife are the owners of the rural property of twenty-one *cuerdas* duly described, Velázquez also holding under lease from mortgagor Roig another parcel of land, property of the latter; that Velázquez has sixteen *cuerda*s of cane planted upon the rented land and three upon his own property; that Roig undertakes to advance to Velázquez, for the cultivation, planting and cutting of the cane, thirty dollars for each *cuerda* of *plantilla,* ten dollars for each *cuerda* of *tocón* or *retoño,* and seventy cents per ton of cane cut and loaded upon the cars, Velázquez acknowledging that since March 7, 1914, the date of the first advance, and up to the date of the execution of the instrument, he had received upon

account of the said agreement $1,021.31; that the account of advances is to bear interest at one per cent per month, to be charged thereon, the whole to be liquidated at the end of each crop or grinding season, upon the 30th of June of the years 1915 and 1916, crediting upon the same the amount of sugar produced; and finally that the said Velázquez and his wife constituted "a mortgage for the amount or sum total of such advances and in favor of 'El Ejemplo' Sugar Company upon the rural property belonging to them described in the first clause of the narrative portion of this instrument, which mortgage is also extended to cover the sum of one hundred dollars in case of foreclosure."

The endorsement of the registrar reads as follows:

"Admission to record of the mortgage created by this instrument is denied for the reason that as the amount of the loan which the said lien is intended to secure cannot be ascertained from the instrument itself, the extent of the right sought to be recorded does not appear expressly. A cautionary notice is entered for 120 days, etc."

The registrar also insists, in the brief filed in support of his ruling, that the Mortgage Law forbids the record of a mortgage to secure unliquidated mortgage credits and relies upon articles 59, 60 and 94 of the law.

A careful consideration of the matter leads us to believe that the ruling complained of must be reversed and that the instrument should be admitted to record, subject to the curable defect hereinafter mentioned.

The articles of the Mortgage Law invoked by the registrar refer to cautionary notices of credits for advances and to the conversion of such entries into mortgage records, while the credit involved herein is not a mere lien for advances but a mortgage expressly executed to secure sums already received and to be received in the future for the purposes indicated in the instrument.

That a mortgage may be given to secure a future obligation is expressly provided by articles 142 and 143 of the Mortgage Law. Commenting upon this article Galindo says:

"As a mortgage is an accessory obligation it may be created to secure the performance of any kind of contract allowed by law, whether it be absolute or conditional, to a day certain or from a day certain; for something contracted for the present, for the future or intended to be contracted; for all of the debt or a part of it; for natural obligations or civil obligations; wherefore the original obligation may not be actionable while the mortgage created by a third party to secure it is actionable." 3 Galindo, *Legislación Hipotecaria,* 353.

It is true that the extent of the mortgage obligation is not fixed exactly but it may be so fixed when the financing account is liquidated, for the liquidation of which a basis has been laid in the deed.

"In the record of a mortgage the amount for which the property is to respond as principal, interest and costs should be clearly expressed, but if this distinction is not made in the deed the registrar should be guided by what it does set out and should not classify the lack of that distinction as a defect, because the important point is to know what the property is liable for as against third parties." 1 Galindo, 594.

In the present case, although no fixed sum is specified as the amount of the mortgage, the nature of the obligation assumed is clearly defined,—an obligation intrinsically insusceptible of liquidation when contracted,—a definite date for such liquidation is named, the property is liable for the total amount of the debt upon that date, and the instrument, once recorded, carries notice of such liability to all third parties. Such total amount could in no event exceed a certain outside maximum readily ascertainable by calculation based upon data contained in the instrument itself. The latter, therefore, by reason of the defect in question, can work no hardship upon anyone other than the parties themselves.

The ruling appealed from must be

*Reversed.*

Chief Justice Hernández and Justices Wolf, del Toro and Aldrey concurred.